IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 16–cv–01162–KMT

NUTRITIONAL BIOMIMETICS, LLC,
    Plaintiff/Counterclaim Defendant and
        Counterclaim Plaintiff,

v.

EMPIRICAL LABS INCORPORATED,
    Defendant/ Counterclaim Plaintiff,

v.

EMEK BLAIR, CLVM, LLC AND CHARLES BARKER
    Counterclaim Defendants/
    Counterclaim Plaintiffs

v.

KELLY GOYEN and ASA WALDSTEIN,

    Counterclaim Defendants.

---

## ORDER

---

This case comes before the court on Counterclaim Defendants Kelly Goyen and Asa Waldstein's ("Defendants") motion for summary judgment on the tortious interference claim asserted against them by Counterclaim Defendants/Counterclaim Plaintiffs Emek Blair, CLVM, LLC and Charles Barker ("Plaintiffs").[1]

---

[1] The parties will be designated as Plaintiffs and Defendants unless context demands otherwise.

On August 8, 2017, Defendants filed their motion under Fed. R. Civ. P. 56. (Doc. No. 249). Plaintiffs filed their response on August 29, 2017 (Doc. No. 261 ["Resp."]), and Defendants filed their reply on September 12, 2017 (Doc. No. 301 ["Reply"]).

## INTRODUCTION

This case concerns competition between two entities engaged in the nutraceutical supplements field. For the purposes of summary judgment disposition, two critical facts are undisputed: (1) that Plaintiff Blair left the employ of Defendant Empirical Labs and established CLVM, LLC, and (2) that Defendants sent an email to potential customers of Plaintiffs following Plaintiff Blair's departure. These facts—in particular, the email itself—give rise to Plaintiffs' suit for tortious interference. The email states:

> It has come to our attention that a disgruntled ex-employee of our company who was recently terminated by Empirical Labs is attempting to establish a business in competition with our company. We understand that he has solicited certain of our customers to do business with him. This former employee has an enforceable non-compete with our company, and we consider his actions improper. We value our relationship and believe that we have provided you with qualified products at good prices. We would hope that in the event you are contacted by our ex-employee that you will decline his invitation … and continue your relationship with Empirical Labs. We would also ask that you inform us of any such contact.

(Doc. No. 261-1 (the "April 2015 email").

Preceding distribution of the April 2015 email, Plaintiff Blair and Defendant Empirical Labs entered into an agreement which contained a covenant not to compete, stating:

> 8. In the event that Emek Blair's employment at Empirical Labs is ended, voluntarily or otherwise, these non-compete terms are in place
>   b. Emek Blair may *not work as a wet chemistry researcher* in the nutraceutical liposomal field for a period no less than 18 months
>     i. Emek Blair may work in an R&D capacity in *any other field* including *but not limited to competing nutraceutical companies*.

(Resp. at 6).(emphasis added.)

2

## STANDARD OF REVIEW

Summary judgment should be granted "if the pleadings together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Reeves v. Churchich*, 484 F.3d 1244, 1250 (10th Cir. 2007). When a motion for summary judgment "is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading" but must set forth "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A disputed fact is "material" if it is essential to resolution of the claim under the relevant law. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). A dispute is "genuine" if the evidence might sway a jury to return a verdict in favor of the non-movant. *Thomas v. Metropolitan Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011)

Relevantly, here, the following axioms have a bearing on summary judgment disposition—*i.e.*, (1) that "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); (2) "the defendant should seldom if ever be granted summary judgment where his state of mind is at issue and the jury might disbelieve him or his witnesses as to this issue" *id.* at 256; and (3) "the plaintiff, to survive the defendant's motion, need only present evidence from which a jury might return a verdict in his favor." *Id.* 257.

These axioms are not token in nature. Instead, they serve an important purpose of preserving a litigant's Seventh Amendment right to jury trial. *Tolan v. Cotton*, 134 S. Ct. 1861, 1868 (2014) ("It is in part for that reason that genuine disputes are generally resolved by juries in our adversarial system.").

**ANALYSIS**

To establish a claim for tortious interference, a plaintiff must show that defendant engaged in: (1) improper conduct with (2) the intention to induce or cause a third party not to enter into or continue business relations with the plaintiff, and (3) defendant actually induced or caused such result. *See Harris Group, Inc. v. Robinson*, 209 P.3d 1188, 1195-96 (Colo. App. 2009).

Defendants concede that, for the purposes of summary judgment, the only element they challenge is the first—*i.e*., a plaintiff must show intentional and improper interference with another's prospective contractual relation. *Dolton v. Capitol Fed. Sav. & Loan Ass'n*, 642 P.2d 21, 23 (Colo.App.1981). Intentional and improper interference preventing the formation of a contract satisfies the element. *Id.*

Here, the pleadings—coupled with the April 2015 email (being evidence beyond the pleadings)—are sufficient to preclude summary judgment. In scrutinizing the April 2015 email *vis-a-vis* the non-compete clause, it is readily apparent that verbiage in the email is either (1) materially different, or (2) lacking language that would more clearly elucidate the scope of the non-compete clause. These differences give rise to possible inferences of impropriety—cutting against Defendants' motion for summary judgment. But in denying the motion, the court need not address the specific language in each document, nor examine the differences themselves. That task is for the jury. Indeed, at this juncture, the court is guided by the axiom that all justifiable inferences must be drawn in favor of the non-moving party—ever more so, as here, in cases involving possible acts of wrongdoing and actual inducement. *Anderson*, 477 U.S. at 255-6.

In addition, Defendants argue in the alternative that competitor privilege applies—and that Plaintiffs' tortious interference claim should be dismissed on that basis.

Though not clearly stated in briefing, this argument is an affirmative defense. *Zimmer Spine, Inc. v. EBI, LLC*, No. 10–cv–03112–LTB–CBS, 2011 WL 4089535, at *5 (D.Colorado. Sept. 14, 2011) ("Under Colorado law, the competitor's privilege is not an element of plaintiff's claim, but an affirmative defense that must be asserted and proven by the defendant."). To establish the defense, a defendant must show that (1) the relation concerns a matter involved in the competition between the actor and the other, (2) the actor does not employ wrongful means, (3) his action does not create or continue an unlawful restraint of trade, and (4) his purpose is at least in part to advance his interest in competing with the other. *Occusafe, Inc. v. EG&G Rocky Flats, Inc.*, 54 F.3d 618, 622-23 (10th Cir. 1995). (citing Restatement (Second) of Torts § 768); *see also Dolton*, 624 P.2d at 23.

Here, the court rejects Defendants' reliance on competitor privilege. Defendants completely conflate the defense of competitor privilege with Plaintiffs' *prima facie* claim for tortious interference. This is precisely the same deficiency exhibited in a recent case before *this* court in *Carskadon v. Diva Int'l, Inc.*, No. 12-cv-01886-RM-KMT, 2014 WL 7403237 (D. Colo. Feb. 26, 2014), report and recommendation adopted, No. 12-CV-01886-RM-KMT, 2014 WL 7403233 (D. Colo. Dec. 29, 2014).

Just as the defendants' motion was denied in *Carskadon*—so too here. Conflation exists in two respects. *First*, Defendants conflate the meaning of improper conduct with wrongful means—*i.e.*, the latter is more narrow, being limited to "physical violence, fraud, civil suits and

5

criminal prosecution." *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 502 (Colo. 1995). This distinction is lost in Defendants' briefing—leading to error in application.

*Second*, and more importantly, the defense has three additional elements beyond that of a *prima facie* claim—*i.e.*, competition, no unlawful restraint, and competitive purpose. Those elements don't exist in a claim for tortious interference; nor have Defendants addressed them here. Indeed, Defendants have only addressed the wrongful means element—giving rise to the concern whether they have properly presented the defense in the first place, let alone whether the defense will actually prevail at trial.[2] Because of this, Defendant's competitor privilege position lacks merit.

## CONCLUSION

The court denies Defendants' motion for summary judgment since, at this stage of proceedings, disposition is inconsistent with summary judgment standards. Notwithstanding Defendants' protestations to the contrary, the claim will proceed to jury trial.

**WHEREFORE**, for the foregoing reasons, this court ORDERS as follows that Defendants Motion for Summary Judgment (Doc. No. 249) be DEINED.

Dated this 15th day of March, 2018.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge

---

[2] *Beeler Properties LLC v. Lowe Enterprises Residential Investors LLC*, 2007 WL 1059034, 4 (D.Colo. April 5, 2007)( citing C.J.I. 24:6, Interference With Contracts—Affirmative Defense—Privilege—When Existent, When Lost, Notes on Use No. 5, which describes the competitor's privilege as set forth in Restatement (Second) of Torts § 768 as an affirmative defense).