IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 16–cv–01162–KMT

NUTRITIONAL BIOMIMETICS, LLC,
     Plaintiff/Counterclaim Defendant and
        Counterclaim Plaintiff,

v.

EMPIRICAL LABS INCORPORATED,
     Defendant/ Counterclaim Plaintiff,

v.

EMEK BLAIR, CLVM, LLC AND CHARLES BARKER,
     Counterclaim Defendants/
     Counterclaim Plaintiffs,

v.

KELLY GOYEN and ASA WALDSTEIN,

     Counterclaim Defendants.

---

**ORDER**

---

This case comes before the court on Defendant/Counterclaim Plaintiff Empirical Labs' motion for leave to designate a substitute expert or in the alternative, a motion in limine *vis-à-vis* cross examination of Richard Gering. (Doc. No. 351.) That motion was filed on January 25, 2018. Plaintiff, Nutritional Biomimetics, LLC and Third-Party Defendants, Emek Blair and CLVM, LLC (collectively, "Plaintiffs") filed a response on February 2, 2018. (Doc. No. 358.) Defendant filed a reply on March 1, 2018. (Doc. No. 361.)

**FACTUAL BACKGROUND**

This case concerns competition between two entities engaged in the nutraceutical supplements field. There has been no shortage of motions filed in this case. This is yet another. It involves Defendant's damages expert, Richard Gering. The core of the dispute lies with Mr. Gering misrepresenting his academic credentials in previous cases, which Defendant has only become aware of since mid-2017. Specifically, the truth about Mr. Gering's prior misrepresentations was revealed on August 8, 2017 during a deposition. At that time, Mr. Gering admitted that he lied about his PhD credentials in other court proceedings, including testimony given under oath:

> Q: WHEN DID YOU START REPRESENTING YOURSELF AS HAVING OBTAINED A PH.D. FROM THE UNIVERSITY OF MARYLAND?
> A: WHILE I WAS FINISHING IT IN THE EARLY '90'S.
> Q: DO YOU RECALL WHEN THE FIRST TIME IS THAT YOU REPRESENTED AS HAVING A PH.D. TO A STATE OR FEDERAL COURT?
> A. I DO NOT. IT MUST HAVE BEEN PROBABLY AROUND 2000 OR LATER BECAUSE I DON'T THINK I EVER TESTIFIED BEFORE THEN.
> **Q. DID YOU TESTIFY UNDER OATH THAT YOU'D OBTAINED A PH.D.?**
> **A. YES.**
> Q. AND THAT WASN'T TRUE.
> A. CORRECT.

(Doc. No. 351-1, Gering Deposition ("Gering Depo.") at 144:6-21; *id.* at 142:11- 143:17.)

While it is true that Mr. Gering did not misrepresent his academic credentials in this case (and Plaintiff has not so alleged), the fact remains that Mr. Gering admitted at his August 8, 2017 deposition that he had lied under oath in several state and federal courts— claiming that he possessed a PhD when, in fact, he did not.

When Defendant retained Mr. Gering, likely around the first half of 2016,[1] information regarding his prior misrepresentations in other cases was widely available on the internet and legal research databases such as Westlaw and LexisNexis.[2] Moreover, in more recent Google searches, multiple links are provided that bring into question the veracity of Mr. Gering's academic credentials in prior cases. (Doc. 356-1.) And while not dispositive because of other evidence in the record, even at the issuance of this order, a Google search reveals Mr. Gering's problematic history.[3] *See* Fed. R. Evid. 201(c) ("A court may take judicial notice, whether requested or not."); *see also Gent v. CUNA Mut. Ins. Society*, 611 F.3d 79 (1st Cir. July 12, 2010) (taking judicial notice of general facts regarding Lyme Disease provided on the Centers for Disease Control website finding it was "not subject to reasonable dispute"); *Denius v. Dunlap*, 330 F.3d 919, 926-27 (7th Cir. 2003) (taking judicial notice of information from official government website).

---

[1] Defendant served Mr. Gering's first expert report on June 24, 2016 and his supplemental expert report on June 30, 2017.

[2] *See e.g. Synygy, Inc. v. ZS Assocs.*, 2015 WL 4578807 (E.D. Pa. July 30, 2015). Although involving Mr. Gering, the case is unique—specifically, the court stated:

> Notably, Synygy [the non-movant] does not argue that defendants were not reasonably diligent. Nor does Synygy argue that, once Novo and ZS became aware of Gering's lack of a PhD, they failed to bring this issue promptly to Synygy's and the Court's attention.

Neither of these deficiencies exist in the non-movant's brief in the instant case. What's more, in this case, Defendant could have learned of the Synergy case through a simple Westlaw search, investigating cases where Mr. Gering had previously testified.

[3] A Google search using search terms, 'Richard Gering expert witness,' can be found here: https://www.google.com/search?q=Richard+Gering+expert+witness&oq=Richard+Gering+expert+witness&aqs=chrome..69i57.175j0j7&sourceid=chrome&ie=UTF-8 (last visited April 25, 2018)

**ANALYSIS**

Rule 16(b) of the Federal Rules of Civil Procedure provides that "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ.P. 16(b)(4); *Gorsuch, Ltd. v. Wells Fargo Nat'l Bank Assn.*, 771 F. 3d 1230, 1240 (10th Cir. 2014). "Good cause" under Rule 16 means that the deadline cannot reasonably be met "despite the diligence of the party seeking the extension." *Delarosa v. Coyote Pumping Svcs., Inc.*, 2013 WL 2285779, at *2 (D. Colo. 2013) (Tafoya, J.) (denying motion to amend scheduling order, including to extend deadline to endorse additional experts, for lack of diligence).

A. *Good Cause Bases for Amending a Scheduling Order*

The central issue is whether Defendant has been diligent in bringing the motion to substitute to the court's attention. The court finds it has not. Defendant's claims—that it has been diligent and no prejudice will beset Plaintiff—are thus rejected. The reason is three-fold.[4]

*First*, nowhere does Defendant meaningfully deal with the fact that it took six months to bring Mr. Gering's falsehoods to the court's attention. Instead, the motion was filed on January, 25, 2018—being six months after Defendant had become aware of the issue that prompted the motion in the first place. This isn't diligence. It's a 'wait and see' tactic that, unfortunately, for Defendant has consequences in the form of denial of its motion to substitute. *See Delarosa*, 2013 WL 2285779, at *3 ("Scheduling Order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril."); *see also Washington v. Arapahoe Cnty.*

---

[4] Defendant's Motion to Amend the Scheduling Order was filed nine months after the discovery cut-off—March 31, 2017. (See Sched. Order; Doc. No. 42.) The parties' dispositive motion deadline was April 30, 2017.

4

*Dept. of Soc. Servs.*, 197 F.R.D. 439, 411 (D. Colo. 2000) (noting that a "scheduling order is an important tool necessary for the orderly preparation of a case for trial").

*Second*, diligence is directly proportional to an attorney's research. It has been lacking here. *Cf. U.S. ex rel. Suter v. Nat'l Rehab. Partners Inc.*, 2006 WL 3531647, at *1 (D. Idaho Dec. 6, 2006) ("a party should investigate the background of a potential expert witness"). Of course, the degree of diligence is related to the complexity of a case. But a basic Google search would seem a baseline for most, if not all forms of litigation that involve expert witnesses. Had Defendant done that here (there is no mention that Defendant did so in briefing), Defendant would have probably seen multiple red flags regarding Mr. Gering's background as shown in Exhibit A of Plaintiff's response.[5] (Doc. 356-1.) Granted, a Google search is not static and search results can change; but, here, it's hard to comprehend that one of Mr. Gering's red flags would not have been detected when entering basic search terms regarding Mr. Gering's background. Defendant's failure to do this, coupled with the failure to ask Mr. Gering rudimentary questions regarding his experience at the time of engagement demonstrate a lack of diligence. Because of this, any amendment to the Scheduling Order would be unwarranted.

*Third*, Defendant points to several cases that purportedly support its position. Not so. On closer inspection, the cases that Defendant cites are inapposite: *Summers v. Missouri Pac. R. R. Syst.*, 132 F. 3d 599 (10th Cir. 1997) and *Rimbert v. Eli Lilly & Co.*, 647 F. 3d 1247 (10th Cir. 2011). In both cases, there was no dispute that the plaintiffs (moving parties) had acted promptly to secure a new expert. *See Summers*, 132 F. 3d at 605 ("the plaintiffs acted promptly [within

---

[5] *See* Kevin Penton, *$16M Medical IP Judgment Relied On Witness Lies, Co. Says*, Law360, Apr. 27, 2015, https://www.law360.com/articles/647911 (discussing Mr. Gering's falsehoods in a previous case)

three weeks] to find new experts" after the court entered an order excluding their originally designated experts); *Rimbert*, 647 F. 3d at 1255-56 (plaintiff "acted diligently" and "moved for a new scheduling order within days of the order granting [defendant's] Daubert motion").[6]

Tellingly, these cases demonstrate that 'timing is everything'—yet Defendant has failed to adhere to this teaching here. Indeed, the most prudent course for Defendant (when it had became aware of Mr. Gering's past falsehoods) would have been to file the current motion, immediately. While even then the grant of the motion would have been a close call, the fact that Defendant waited a further six months only fortifies the case against it.

In sum, litigants ignore deadlines at their peril. While denial of Defendant's motion is unfortunate for its case should it decide to put Mr. Gering on the stand, it is hoped that it will give pause to *both* parties—not just Defendant—as *both* have been charging towards trial without thinking through the steps they are taking and the consequences that flow from them.[7] Greater diligence will be required. Defendant has failed in this regard for present purposes. Its motion is denied. *See Jorgensen v. Montgomery*, 2007 WL 3119549, at *3 (D. Colo. Oct. 19, 2007) ("Rule 16(b) does not focus on the bad faith of the movant, or the prejudice to the opposing party . . . it focuses on the diligence of the party seeking leave to modify the scheduling order to permit the proposed amendment.")

---

[6] Defendant's reliance on *Suter* is also misplaced. There, the plaintiffs learned for the first time during their expert's deposition that he did not possess a Master's degree, as suggested in his CV. *See Suter*, 2006 WL 3531647, at *1. However, unlike the facts here, the plaintiffs severed their relationship with the expert "within a week after his deposition because [the expert's] inaccurate CV would make him a dishonest witness." *Id*.

[7] The multiple summary judgment motions that were requested for disposition were bordering on incredible. It is only hoped that the parties will be more discerning when filing future motions—such as motions in limine—in the lead up to trial.

## B. Defendant's Motion in Limine in the Alternative

In the alternative, Defendant requests that the court restrict Plaintiffs' cross-examination of Mr. Gering (should he take the witness stand). Stated another way, Defendant requests that the court preclude any improper character attack on Mr. Gering's past falsehoods.

Under Rule 608 of the Federal Rules of Evidence, a party may attack the credibility of a witness by cross-examining the witness on specific instances of past conduct. Fed. R. Evid. 608(b). While those specific instances may generally not be proven by extrinsic evidence, "the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of … the witness…." Fed. R. Evid. 608(b)(1). Admissibility under Rule 608(b) is subject to the court's discretion under Rule 403. *See United States v. Girdner*, 773 F. 2d 257, 261 (10th Cir. 1985). Under Rule 403, the court may exclude relevant evidence only if its probative value is "substantially outweighed" by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 403. Courts favor admission of all relevant evidence not otherwise proscribed and recognize that exclusion under Rule 403 is "an extraordinary remedy [that] should be used sparingly." *United States v. Woodard*, 699 F. 3d 1188, 1196 (10th Cir. 2012).

Here, it is not clear what line of detailed questioning Defendant seeks to preclude. If it is questioning directed to Mr. Gering's credentials and his untruthfulness in *previous* cases, the court finds no reason to limit such questioning. This line of questioning goes to the very core of his expert credentials and would thus be probative to jury determination on credibility. Such

evidence going to credibility is not substantially outweighed by a danger of unfair prejudice.[8] *See United States v. Whitmore*, 359 F. 3d 609, 619 (D.C. Cir. 2004) (Rule 403 tilts, as do the rules as a whole, toward the admission of evidence).

## CONCLUSION

**WHEREFORE**, for the foregoing reasons, this court ORDERS as follows:

1. That Defendants' Motion to Substitute its Expert is DENIED. (Doc. No. 351)
2. That Defendants' Motion in Limine is DENIED. (Doc. No. 351)

Dated this 30th day of April, 2018.

BY THE COURT:

_____
Kathleen M. Tafoya
United States Magistrate Judge

---

[8] Plaintiff must show care to ensure that questioning on truthfulness is limited to Mr. Gering's credentials in *prior* cases—not this one. Defendant will naturally be permitted rebuttal. Defendant's counsel can come forward with evidence to bolster and rehabilitate Mr. Gering's credibility, noting that any falsehoods have only occurred in *prior* cases.