IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 16–cv–01162–KMT

NUTRITIONAL BIOMIMETICS, LLC,
  Plaintiff/Counterclaim Defendant and
    Counterclaim Plaintiff,

v.

EMPIRICAL LABS INCORPORATED,
  Defendant/ Counterclaim Plaintiff,

v.

CHARLES BARKER
  Counterclaim Defendant,

and

EMEK BLAIR, and
CLVM, LLC,
  Counterclaim Defendants/
  Counterclaim Plaintiffs

v.

EMPIRICAL LABS, INCORPORATED,
KELLY GOYEN and
ASA WALDSTEIN,

  Counterclaim Defendants.

---

# ORDER

---

This matter is before the court on "Defendant Empirical Labs' Motion *In Limine* to Exclude Evidence of Undisclosed Damages" [Doc. No. 381] ("MUD") filed May 26, 2018 and

on "Defendant Empirical Labs' Motion *In Limine* to Exclude Undisclosed Expert Opinion Testimony" [Doc. No. 411] filed October 26, 2018. Both motions are fully briefed and trial is scheduled to begin on January 7, 2019.

Pursuant to the court's directive, Empirical Labs, the proponent of each motion, filed "Empirical Labs' Notification Concerning Pending Motions *In Limine*" [Doc. No. 453] on December 14, 2018. Neither party asked for supplementary briefing as to either motion, indicating that both motions were ripe for ruling by the court as briefed.

Nutritional Biomimetics, LLC's ("NB") only damages disclosure to date reads as follows:

> **III. C.R.C.P. 26(a)(1)(C) Computation of Damages.** Plaintiff and Third-Party Defendants seek damages from Defendants and Third-Party Defendants, including but not limited to actual damages, presumed damages, special damages, and consequential damages. It is not yet possible to provide a precise calculation as to those damages and other harm caused by Defendant and Third-Party Defendants. A substantial amount of information needed to provide such a calculation is in the possession of Defendant. Once that documentation has been disclosed, Plaintiff will provide that estimate in due course through expert testimony. At this time, Plaintiff has determined that Defendant is liable to Plaintiff for the "full retail price of manufactured products" that it produces without a license. Upon information and belief, Defendant has manufactured products that would entitle Plaintiff to damages in the amount of $708,847.50. Plaintiff also seeks equitable relief in the form of a preliminary and permanent injunction as described in its filings with the Court. Plaintiff and Third Party Defendants also seek their attorneys' fees, costs and pre- and post-judgment interest.

MUD, Ex. A, [Doc. No. 382-1] at 4.

The MUD seeks to exclude evidence of NB's undisclosed "claimed damages, and limiting NB's evidence to that supporting its claims for equitable relief." (MUD at 14.) Empirical Labs claims that in spite of NB's promises in its initial disclosures that NB would provide damage estimates "in due course through expert testimony," NB never disclosed a

damages expert witness and did not supplement its disclosure with respect to calculations of damages sought. *Id*. Empirical Labs claims that:

> NB and its two affiliates[1] did not disclose which of the three claimants sought which damages, did not disclose any computations for their damages, did not disclose even "lump-sum" figures, did not disclose which categories were claimed for which of their combined seven substantive claims for relief, and did not disclose against which of the defending parties the damages were sought.

*Id*. at 5. Additionally, Empirical Labs claims that in response to its discovery requests about damages, NB responded only:

> Plaintiff's damages calculation is as follows[.] Plaintiff reserves the right to amend its damages calculation as discovery continues. Pursuant to the Licensing Agreement executed on June 3, 2014[,] Empirical is liable to Plaintiff for the "full retail price of manufactured products" that it produces without a license. Upon information and belief, Defendant has produced the following products, with the following retail prices as listed below.

| Date | Product | Customer | Units (#) | retail price ($) | retail total ($) | License history |
|---|---|---|---|---|---|---|
| Jan 2015 | Phytalive | phytalive | 3200 | 69.95 | 223840 | No license issued. |
| Jan 2015 | Lipo C | AB Nutra | 2500 | 39.99 | 99975 | expired dec 31 2014 |
| Jan 2015 | Lipo GSH | AB Nutra | 1350 | 69.99 | 94486.5 | expired dec 31 2014 |
| Jan 2015 | lipo curc | AB Nutra | 1350 | 39.99 | 53986.5 | expired dec 31 2014 |
| Jan 2015 | lipo b12 | AB Nutra | 1350 | 44.99 | 60736.5 | expired dec 31 2014 |
| Jan 2015 | lipo D | AB Nutra | 1350 | 39.99 | 53986.5 | expired dec 31 2014 |
| Jan 2015 | lipo res | AB Nutra | 1350 | 39.99 | 53986.5 | expired dec 31 2014 |
| Jan 2015 | Curc/Astragalus | NatureRich | 1150 | 59 | 67850 | expired dec 31 2014 |

*Id*. at 6. citing (Ex. C: NB's Resp. to Second Request for Expedited Discovery, June 9, 2015, at 7-8, interrog. no. 5). This response was likewise never supplemented by NB.

On April 20, 2017, this court entered an Order with respect to NB's claimed liquidated damages contained in a contract between Empirical Labs and NB. (April 20, 2017 Order granting in part Empirical Labs' Motion for Partial Summary Judgment [Doc. No. 172]) ("Damages Order"). This court specifically held that NB's claimed damages of $708,847.50

---

[1] The court infers this references Counterclaim Defendants Emek Blair and his company CLVM, LLC.

representing the "full retail price" of Empirical Lab's sold products was "punitive, rather than compensatory" and that the "stipulated amount is not reasonably related to the actual damage suffered by NB for Empirical Lab's alleged breach of the Resolution." *Id*. at 9 (citing *Peerless Enters., Inc. v. T.N.T., Inc.*, 511 P.2d 538, 539 (Colo. App. 1973))(stipulated damages clause was unenforceable under the second factor because it allowed the injured party to recover as income the "gross profits" of the violating party "without incurring any of the expenses ordinarily required to produce income"). Empirical Labs argues that by no later than April 20, 2017, NB knew that the court found "the proper measure of damages is the actual damage suffered [by NB as] the non-breaching party" (Damages Order at 11) and that NB's only specific damages disclosed in its Rule 26 disclosures was removed by the court.

Empirical Labs states and NB does not deny that NB never supplemented this discovery response following the court's ruling in the Damages Order with any theories of computation of "actual damages" nor did it offer even so much as a lump sum calculation about how much and under what theory it would be attempting to prove its "actual damages" nor did NB offer any damages expert whose report might have been expected to offer a calculation theory for NB's actual damages, if any.

Discovery in this case closed on or about July 31, 2017, after multiple extensions, approximately three months subsequent to the Damages Order. *See, e.g*. [Doc. No. 224] and [Doc. No. 221] at 2 (recounting history of discovery cutoff extensions). Empirical Labs' motion was filed, as noted, in May, 2018. Subsequent to the filing of the MUD, rather than attempting to immediately ameliorate any of the alleged disclosure deficiencies, NB instead responded that it could "not provide a precise calculation of damages," adding that: "[a] substantial amount of

4

information needed to provide such a [damages] calculation is in the possession of Defendant." (Resp. to MUD [Doc. No. 389] at 4.) However, at the time of the filing of the Response on July 2, 2018, discovery had been closed for almost one year. Therefore, the time had long passed to request and receive information and evidence needed for Plaintiff to prove its actual damages as it was legally required to do. *See v. Rivers*, 394 F.3d 850, 853 (10th Cir. 2005)(It is axiomatic that a plaintiff bears the burden of providing evidence in support of her damages claim)(citing *O'Neal v. Ferguson Constr. Co.,* 237 F.3d 1248, 1256 (10th Cir. 2001).

NB argues in response to the motion that "Empirical is and has been aware that NB is seeking, as damages for Empirical's breach of contract, misappropriation of trade secrets and civil theft, 15% of Empirical's profits from its sales of liposomal products."[2] (Resp. MUD at 4.) NB argues, therefore, that even though it did not supplement its damages disclosures, Empirical Labs suffers no harm because they have always had knowledge of NB's damages theory. For this assertion, NB cites to Empirical Labs' Motion for Partial Summary Judgment [Doc. No. 94] which ultimately begat the Damages Order wherein Empirical Labs' claimed that:

> At the time, Empirical Labs was sharing 15% of its profits from the sale of liposomal products with NB. (internal citations omitted) Presumably, if Empirical Labs breached the Resolution, NB could calculate its actual damages as 15% of the profits Empirical Labs earned as a result of the breach. In fact, Blair acknowledged that NB's presumed damages were already known at the time he drafted the resolution. Prelim. Inj. Hr'g. Tr. 69:5 – 6 ("It can't be like, well, I just pay you *the percentages that we already agreed on* or something like that." Emphasis added). The ease with which NB could calculate its actual damages, namely "the percentages that we already agreed on," once again shows that NB did not intend to liquidate its damages.

[Doc. No. 93-94 at 12-13.]

---

[2] This motion does not raise issues associated with NB's damages disclosures related to Blair and CLVM's claim for tortious interference with business advantage.

Only two pages later, however, NB seems to contradict itself about what its actual damages theory will be at trial, stating

> Based on this information [derived from Empirical Labs expert Gering calculating Empirical Labs "profits for sales of liposomal products in 2015"], NB *calculates* at the full amount of Empirical's net profits and likewise for all years following. Empirical did not have authority to continue manufacturing liposomal products without a contract with NB and therefore, *any* profit stemming from its unauthorized use of Dr. Blair's formulas is rightly NB's."

(Resp. MUD at 6)(emphasis added). NB further states as to subsequent years, "the same damages rationale would apply and presumably, Empirical will disclose its net profits at trial as it is the basis for its damages for its claims." *Id.* NB's language is confusing. NB's use of the term "any profit" signifies a claim for damages based on 100% of Empirical Labs' profits from liposomal products, which NB thinks it can prove by using Mr. Gering's expert analysis.[3] Alternatively, since NB represents it is "calculating" something, it could be interpreted that NB intends to use the Empirical Labs profit as calculated by Mr. Gering[4] as a basis for then applying

---

[3] Alas, this is not the way the party with the burden of proof can proceed on proof of an essential element of its claims. Mr. Gering is listed as an expert witness on Defendant's side of the ledger and does not appear as a witness of any kind on Plaintiff's list of witnesses set forth in the Final Pretrial Order. Therefore, Plaintiff would be unable to call Mr. Gering as a witness in its case-in-chief. *Monfore v. Phillips*, 778 F.3d 849, 851 (10th Cir. 2015)(a final pretrial order focused on formulating a plan for an impending trial may be amended "only to prevent manifest injustice.")(citing Fed. R. Civ. P. 16(e); *Great W. Food Packers, Inc. v. Longmont Foods Co.*, 636 P.2d 1331 (Colo. App. 1981)(Pretrial order, if not objected to, controls introduction of evidence at trial.) Not only does NB not list Mr. Gering as a witness or an expert witness in its case, NB specifically does list, in section 6.I.(b)(2) of the Final Pretrial Order, may call expert witness, "Alan L. Mayer, rebuttal expert; 6021 S. Galena Court, Englewood, CO 8011. Mr. Mayer may testify that Mr. Gering's damages calculations are not reliable." [Doc. No. 471 at 17.] Presentation of Mr. Gering's calculations through any other method for truth of the matter asserted would be impermissible hearsay. Fed. R. Evid. 801(c).

[4] See preceding footnote.

a 15% mathematical multiplication calculation to derive what it is claiming are its actual damages.

Further, NB now asserts that its witness with respect to damages is Dr. Blair, who has not been associated with Empirical Labs since early February, 2015. (Resp. MUD at 5.) Dr. Blair is not purported to be an expert in accounting or economics.

**ANALYSIS**

Federal Rule of Civil Procedure 26 provides, in relevant part:

> (a) Required Disclosures.
>   (1) Initial Disclosure.
>     (A) In General. Except as exempted by Rule 26(a)(1)(B) or as otherwise stipulated or ordered by the court, a party must, without awaiting a discovery request, provide to the other parties: . . .
>       (iii) a computation of each category of damages claimed by the disclosing party–who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered;

*Id*. Further, the Rule continues:

> (e) Supplementing Disclosures and Responses.
>   (1) In General. A party who has made a disclosure under Rule 26(a)–or who has responded to an interrogatory, request for production, or request for admission– must supplement or correct its disclosure or response:
>     (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or
>     (B) as ordered by the court.

*Id*.

Where a party fails to comply with Rule 26, the opposing party has recourse in Rule 37, which provides, in relevant part: "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to

7

supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed.R.Civ.P. 37(c)(1). *See Adams v. Cline Agency, Inc.,* No. 10-CV-02758-WJM-KLM, 2013 WL 2444696, at *1–2 (D. Colo. June 5, 2013). The non-moving party has the burden of showing that they were substantially justified in failing to comply with Rule 26(a)(1). *Id.*; *Nguyen v. IBP, Inc.,* 162 F.R.D. 675, 680 (D. Kan. 1995).

In addressing Rule 37 generally, the Tenth Circuit has made clear that "[t]he protections and sanctions found in the discovery rules are not absolute and contemplate the use of judicial discretion." *Marshall v. Ford Motor Co.,* 446 F.2d 712, 713 (10th Cir.1971); *see also Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.,* 170 F.3d 985, 993 (10th Cir. 1999) (recognizing that Rule 37(c) vests broad discretion with the trial court); *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.,* 259 F.3d 1101, 1106 (9th Cir.2001) (noting that the district court's discretion should be given particularly wide latitude in imposing sanctions under Rule 37(c)(1)); *Ortiz–Lopez v. Sociedad Espanola de Auxilio Mutuo Y Beneficiencia de Puerto Rico,* 248 F.3d 29, 34 (1st Cir.2001) (holding that district courts have broad discretion in meting out Rule 37(c) sanctions for Rule 26 violations).

The court is wholly dismissive of NB's claims that it did not know and does not currently believe its disclosures were inadequate and in need of supplementation. This argument flies in the face of simple logic. On April 20, 2017 the court rejected the Plaintiff's reliance on the liquidated damages portion of a contract between NB and Empirical Labs to prove damages. The court flatly rejected Empirical Lab's request that NB be limited to damages in the amount of 15% of Empirical Lab's profits and instead directed that NB could prove its <u>actual damages</u> associated with its claims for breach of contract, misappropriation of trade secrets and civil theft.

There was nothing veiled or implied about the Damages Order. It clearly gave NB license at that time to gather evidence in support of its actual damages which could have proven in a myriad of ways. There were still three months left in the discovery period. One such way Plaintiff could have tried to present actual damages, for instance, might have included proof of the defendant's gross sales and shifting the burden to the defendant to show that any portion of those sales that should not be attributable to the misappropriation of trade secrets, and to show expenses which should be deducted. *See Benton v. Avedon Eng'g, Inc.*, No. 10-CV-01899-RBJ-KLM, 2012 WL 3399367, at *6 (D. Colo. Aug. 15, 2012). *See also Ice Corp. v. Hamilton Sundstrand Corp.,* No. 05–4135–JAR, 2012 WL 461805, at *3, *3 n. 9 (D. Kan. Feb.13, 2012) (citing *e.g., Cartel Asset Mgmt. v. Ocwen Fin. Corp.,* 249 F. App'x 63, 78–79 (10th Cir.2007) (placing burden of showing apportionment to establish actual damages in misappropriation of trade secrets case on unjust enrichment theory on defendant).) Other methods to calculate actual damages could certainly been explored as well. *See, e.g*. *Sonoco Prod. Co. v. Johnson*, 23 P.3d 1287, 1290 (Colo. App. 2001)(In claim for misappropriate of trade secrets case, plaintiff's expert testified that the actual damages, in the form of cost of capital based on research and development costs, were in the $19 to $25 million range.); *Cartel Asset Mgmt. v. Ocwen Fin. Corp*., No. 01-CV-01644-REB-CBS, 2011 WL 1134714, at *2 (D. Colo. Mar. 29, 2011)(actual damages for misappropriation of trade secrets were measured by determining the profits the defendant earned and the cost savings the defendant realized by using the plaintiff's trade secret.) This court very specifically did not restrict NB to any particular method or theory of proving its alleged actual damages associated with its claims.

Since the disclosures up to that time primarily centered on Plaintiff's claimed liquidated damages, NB was on notice by at least April 20, 2017, of a need to supplement its damages disclosures under Fed. R. Civ. P. 26(e)(1)(A) when the court disallowed the liquidated damages theory.

The fact that NB's damages disclosures in its initial Rule 26 disclosures were inadequate was raised by Empirical Labs by the instant motion filed over six months ago. Nonetheless, NB has not make any attempt to correct the problem, opting instead to blame Empirical Labs for not bringing NB's failures and deficiencies to the forefront earlier and making statements that Empirical Labs should somehow have – apparently via osmosis – divined NB's damages theory. At this point the court is unaware whether NB seeks as actual damages all of Empirical Lab's profits from liposomal products or only 15% of such profits, whether profit calculations are for gross or net profits and what factors may influence the calculation of profits during the time period after Emek Blair left the employ of Empirical Labs, whether NB's theory would require burden shifting to Empirical Labs with respect to proof of expenses or other disallowances, which products are involved, what gross and/or net profits were for Empirical for the years 2015 to date and what the total amount claimed is, as well as any methodology NB intends to use to justify a calculation. As of the date of this Order, NB's damages and damages theories are still murky and its ability to present admissible evidence of any damages at all is extremely tenuous.[5]

---

[5] Setting aside the issue of trying to call Mr. Gering as a witness, NB claims that its damages in the form of all of a part of profits made by Empirical Labs can be proven by the testimony of Emek Blair. Under Rule 701, Fed. R. Evid., a lay witness may give testimony in the form of "opinions or inferences which are (a) rationally based on the perception of the witness, and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. The Tenth Circuit and this Court have noted that a business owner

"A defendant generally is entitled to a specific computation of damages." *D.R. Horton, Inc. - Denver v. Travelers Indem. Co. of Am.*, No. 10-CV-02826-WJM-KMT, 2012 WL 400662, at *2 (D. Colo. Feb. 8, 2012) quoting *Kleiner v. Burns,* No. 00–2160–JWL, 2000 WL 1909470, at *2 (D. Kan. Dec.22, 2000). Without a doubt, NB's damages disclosures are incomplete and deficient under the Rules. Also without a doubt, NB knew or should have known by no later than April 20, 2017, that it needed to supplement its disclosures with its methodology of calculating actual damages and with actual calculations.

Given NB's manifest disclosure deficiencies, the question before the Court is whether Rule 37(c) mandates exclusion of monetary damages evidence at trial. "The determination of whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the district court." *Woodworker's Supply,* 170 F.3d at 993. Once a party has established that the other has failed to make appropriate disclosures, it is the party seeking to present evidence of

---

may testify as to the entity's damages from lost profits so long as such testimony satisfies the requirements of Rule 701. *See LifeWise Master Funding v. Telebank,* 374 F.3d 917, 929–30 (10th Cir..2004) (collecting cases); *Mooring Capital Fund, LLC v. Knight,* 388 Fed. Appx. 814, 824–25 (10th Cir.2010)(business owner may be qualified to testify about lost profits when (1) owner has sufficient personal knowledge of business and factors in estimating lost profits or (2) owner's evaluation based on straightforward, commonsense calculations); *Jayhawk Capital Mgmt., LLC v. LSB Indus., Inc.,* No. 08–2561–EFM, 2011 WL 1626581, at *8 (D. Kan. April 28, 2011)(under certain circumstances business owner may testify regarding lost profits). See also *Presbyterian Manors, Inc. v. SimplexGrinnell, L.P.*, No. CIV.A. 09-2656-KHV, 2011 WL 3241454, at *9 (D. Kan. July 29, 2011). What seems to have been utterly lost on NB is that a business owner may be qualified as a lay witness to testify *to his own business's lost profits* but this would in no way, standing alone, qualify him to opine on some other business's profits and/or loss during a time period where the witness had no personal knowledge of the company's ongoing operations. The court finds, without deciding, that Emek Blair who has no reported experience as an accountant or economist would likely not be qualified to opine on Empirical Lab's "profit" under Fed. R. Evid. 701 or 702, even if damages had been sufficiently disclosed. However this decision, which would necessarily be made during trial, after the presentation of evidence, is moot given the court's ruling on the insufficient disclosure of damages by NB.

11

those undisclosed items—here, NB—that must prove that its failure is substantially justified or harmless. *Guidance Endodontics, LLC v. Dentsply Int'l, Inc.*, No. CIV 08-1101 JB/RLP, 2009 WL 3672495, at *8 (D.N.M. Sept. 29, 2009). *See Hirpa v. IHC Hosps., Inc.,* 50 Fed. Appx. at 932 (10th Cir.2002). The Tenth Circuit has identified four factors for consideration in determining whether the failure to disclose is substantially justified or harmless: (1) the prejudice or surprise to the impacted party; (2) the ability to cure the prejudice; (3) the potential for trial disruption; and (4) the erring party's bad faith or willfulness. *Id.; Adams at *3.*

There would clearly be prejudice to Empirical Labs to allow NB to go forward with presenting damages in its case when it is so clearly has not made even a rudimentary attempt at disclosing a damages theory and, at the very least, disclosed a lump sum amount requested. Empirical Labs now has no way of defending against the methodology or implementation of the unknown damages theory or prepare to meet it, if required, with evidence of its own. Contrary to placing the blame on Empirical Labs' alleged failure to demand that NB comply with its legal duties regarding damages disclosure, the court finds that NB absolutely knew it needed to make supplemental damages disclosures as far back as April 20, 2017, but in spite of Empirical Labs making every attempt to nudge NB into making its disclosures in May of this year by filing the instant motion, NB chose instead to cast the blame on Empirical Labs and continued to turn a blind eye on its own failures. The court even delayed ruling on the motion, again providing NB with time to make the appropriate disclosures so that it could at least point to good faith compliance before trial and arguing a lack of prejudice thereby. But instead NB willfully chose its obstinate path to its own detriment. The court finds that NB's failure to comply with Fed. R. Civ. P. 26 is neither substantially justified nor is it harmless. To allow NB to fully disclose its

damages theories and calculations so close to trial would cause the court to reschedule the trial date to prevent manifest injustice, thereby disrupting the trial.

Therefore it is **ORDERED**

1. "Defendant Empirical Labs' Motion *In Limine* to Exclude Evidence of Undisclosed Damages" [Doc. No. 381] is **GRANTED**. Pursuant to Fed. R. Civ. P. 37(c)(1), for failure to disclose and supplement in compliance with Fed. R. Civ. P. 26, the court will exclude any and all evidence of NB's claimed monetary damages associated with its claims of breach of contract, misappropriation of trade secrets and civil theft and NB will be limited to presenting evidence supporting its claims for equitable relief only.

2. "Defendant Empirical Labs' Motion *In Limine* to Exclude Undisclosed Expert Opinion Testimony" [Doc. No. 411] is **DENIED** as moot.

Dated December 28, 2018.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge